**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CARL JONES, JR.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| *v.* | ) | **Case No.  2:22-cv-2226** |
| | ) | |
| **SHAWNEE F, LLC** | ) | **JURY TRIAL DEMANDED** |
| *d/b/a* **SHAWNEE MISSION FORD**, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **SANTANDER** | **)** | |
| **CONSUMER USA INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Carl Jones, Jr., by and through his counsel of record, and, for his Complaint, states as follows:

### PARTIES

1.     Plaintiff Carl Jones, Jr., is a natural person, consumer, and resident of Kansas City, Missouri.

2.     Defendant Shawnee F, LLC, d/b/a Shawnee Mission Ford ("SM Ford") is a Delaware limited liability company with its principal place of business in Shawnee, Kansas. It can be served via its registered agent: Corporation Service Company, 2900 S.W. Wanamaker Dr., Ste. 204, Topeka, KS 66614.

3.     Defendant Santander Consumer USA Inc. ("Santander") is an Illinois corporation. It can be served via its registered agent: The Corporation Company, 112 S.W. 7th Street., Ste. 3C, Topeka, KS 66603.

**JURISDICTION & VENUE**

4.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is diverse and the amount in controversy exceeds $75,000.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS COMMON TO ALL COUNTS**

6.      On or about July 12, 2021, Plaintiff purchased from SM Ford the 2018 Honda Ridgeline with VIN: 5FPYK3F77JB002258 (the "Ridgeline").

7.      Pursuant to the Retail Buyers Order (the "RBO") provided to Plaintiff, the total balance due for the Ridgeline was $33,250.30.

8.      That amount entailed a $1,500 trade-in allowance for a 2010 Kia, $500 down payment, $600 GAP insurance, and $2,900 service contract.

9.      The RBO stated that the Ridgeline's mileage at the time of purchase was 88,921.

10.      The Total Loss Protection Addendum provided to Plaintiff stated a repayment schedule of 60 months, with a 19.05% APR and monthly payment of $870.30.

11.      The APR, given fixed monthly payments, resulting from such a schedule, relative to the financed amount of $33,250.30, is actually 19.424%, suggesting that Plaintiff's Truth in Lending Act disclosures may have violated 15 U.S.C. § 1606(c)'s allowable deviation of 0.125% by 249 basis points.

12.     On information and belief, SM Ford assigned Plaintiff's financing contract to Defendant Santander.

13.     SM Ford didn't transfer the Ridgeline's title to Plaintiff at the time of purchase/delivery.

14.     Pursuant to K.S.A. § 8-135(c)(7), sixty days—inclusive of holidays and weekends—is the *maximum* period the seller of a vehicle (required to be registered in Kansas) has to assign the vehicle's title to the buyer following delivery.

15.     However, SM Ford didn't transfer the Ridgeline's title to Plaintiff within sixty days.

16.     Rather, SM Ford didn't send Plaintiff the Ridgeline's title until **April 28, 2022**, over *seven months* after the expiry of the vehicle's temporary tags; the Ridgeline had been taken from Plaintiff's driveway, for lack of registration, to an impound lot; and the Ridgeline's sale to Plaintiff was "fraudulent and void" as a matter of Kansas law.

17.     In the interim, Plaintiff was compelled to leave the truck parked in his driveway, useless; obtain rides from friends; and purchase, in early 2022, a cheap replacement truck, for $1,000.

18.     For SM Ford's part, in light of its objective failure to timely transfer the Ridgeline's title, it crafted excuses whereby it sought to blame Plaintiff for that failure.

19.     One such excuse was that Plaintiff owed a $500 down payment which, as stated, had already been processed by SM Ford at or near the time of purchase.

20.     Later, SM Ford informed Plaintiff that, as to the misrepresentation regarding the down payment, it had mistaken him for a "Carl Johnson."

21.     Then, desperate for another excuse, SM Ford told Plaintiff it couldn't send him the Ridgeline's title because of an extant lien on his trade-in Kia, for which he'd received, as stated, a $1,500 trade-in allowance.

22.     Indeed, Westlake Financial Services, the former lienholder as to the trade-in Kia, released its lien *on November 17, 2016*. Thus, SM Ford's representation regarding a lien that needed to be reconciled was also false.

23.     As stated, Plaintiff's ordeal dragged on for months, with no aid from Defendants.

24.     Plaintiff wrote to the Kansas Attorney General regarding the ordeal, to no avail.

25.     Plaintiff made a number of $870 monthly payments on the Ridgeline, as well as insurance payments of approximately $120 per month.

26.     Because an apparent agent of a towing company routinely patrols Plaintiff's neighborhood for unlicensed vehicles, and because the Ridgeline was sitting, untagged, in Plaintiff's driveway, that agent informed Plaintiff that the Ridgeline would be towed. This occurred in early 2022.

27.     However, that towing agent temporarily abstained from towing the Ridgeline as, given Plaintiff's pleas and explanation, he was willing to do Plaintiff a favor. However, after approximately two months, Downtown Towing towed the Ridgeline to an impound lot.

28.     The cost of that tow was, on information and belief, at least $500, to be billed to Plaintiff, but may have climbed as high as $2,000 or more.

29.     As the Ridgeline had actually been towed, Plaintiff ceased making monthly payments on it. Thus, even though the sale of the Ridgeline had long since been "fraudulent and void," Plaintiff paid approximately $7,000 to Santander for the (useless) vehicle, as well as making insurance payments.

30.     Even though the Ridgeline's sale was "fraudulent and void" as a matter of law, Santander informed Plaintiff, quite falsely, that he needed to continue making payments on the truck.

31.     Since Plaintiff, rightfully, stopped making payments on the Ridgeline, Santander also began calling him about repossessing it.

32.     Plaintiff has suffered damages because of Defendants' conduct. Such damages include, but aren't limited to, payments made on the Ridgeline; insurance payments, as well as any other payments (e.g., for inspection), made incident to the Ridgeline's purchase; the loss of the trade-in Kia; the loss of the $500 down payment; substantial wasted time; the loss of use of the Ridgeline (i.e., despite making timely payments, Plaintiff, as described, couldn't legally drive the truck such that he had to get rides from friends); the $1,000 replacement truck purchased by Plaintiff, as well as any payments, such as insurance or registration, made incident to its purchase; any reduction in credit expectancy resulting from negative credit reporting by Defendants; any reduction in credit expectancy resulting from negative credit reporting incident to the towing of the Ridgeline; and significant emotional distress.

33.     On information and belief, such conduct is part of a pattern and practice by SM Ford. *See Mercado-Ramirez v. Johnson Cty. Inv'rs et al.*, Case No. 21-CV09137 (Johnson Cty., KS).

34.     Because Santander is the holder of the contract financing Plaintiff's purchase of the Ridgeline, it's liable for all claims Plaintiff has against SM Ford in this regard.

### COUNT ONE:
### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT,
### K.S.A. § 50-623 *et seq.*
*Against SM Ford*

35.     Plaintiff, for this Count One of his Complaint, incorporates the previous paragraphs as if wholly set forth herein.

36.     Plaintiff is a "consumer" and SM Ford a "supplier" for the purposes of the Kansas Consumer Protection Act (the "KCPA"). *See* K.S.A. § 50-624(b),(l).

37.     Plaintiff's purchase of the Ridgeline was a "consumer transaction" pursuant to K.S.A. § 50-624(c).

38.     Plaintiff has been damaged and is "aggrieved" under the KCPA because of SM Ford's conduct.

39.     The KCPA "shall" be liberally construed to promote its policies of protecting consumers against suppliers that commit deceptive and unconscionable practices. K.S.A. § 50-623.

40.     SM Ford's violations of K.S.A. § 50-626, Deceptive Acts and Practices, include but are not limited to:

a)      Making, generally, false and/or misleading representations, knowingly or with reason to know, in violation of K.S.A. § 50-626(a);

b)      Making willful use, in oral or written representations, of exaggeration, falsehood, innuendo or ambiguity, in violation of K.S.A. § 50-626(b)(2);

c)      Willfully failing to state a material fact, or the willful concealment, suppression, or omission of a material fact, in violation of K.S.A. § 50-626(b)(3);

d)      Falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies or obligations, in violation of K.S.A. § 50-626(b)(8);

e)      Committing, in violation of K.S.A. § 50-626, the following deceptive acts and/or practices:

   i.      Failing to provide the Ridgeline's title within sixty days of delivery, in contravention of Kansas law;

   ii.     Blaming lack of down payment as the reason why SM Ford wasn't timely transferring title;

   iii.    Blaming confusion of Plaintiff with an alleged "Carl Johnson" as the reason why SM Ford had misrepresented the down-payment status;

   iv.     Blaming an extant lien on the trade-in Kia as the reason why SM Ford wasn't timely transferring title;

   v.      Retaining Plaintiff's down payment despite a "fraudulent and void" sale; and

   vi.     Retaining Plaintiff's trade-in Kia despite a "fraudulent and void" sale.

41.     SM Ford's violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include but are not limited to:

a)      Making unconscionable representations/misrepresentations and/or engaging in unconscionable conduct, in violation of K.S.A. § 50-627(a), including but not limited to:

i.      Failing to provide the Ridgeline's title within sixty days of delivery, in contravention of Kansas law;

ii.     Blaming lack of down payment as the reason why SM Ford wasn't timely transferring title;

iii.    Blaming confusion of Plaintiff with an alleged "Carl Johnson" as the reason why SM Ford had misrepresented the down-payment status;

iv.     Blaming an extant lien on the trade-in Kia as the reason why SM Ford wasn't timely transferring title;

v.      Retaining Plaintiff's down payment despite a "fraudulent and void" sale;

vi.     Retaining Plaintiff's trade-in Kia despite a "fraudulent and void" sale; and

vii.    Engaging in a pattern of conduct that, taken in its totality, was unconscionable.

b)      Making unconscionable representations/misrepresentations and/or engaging in unconscionable conduct, in violation of K.S.A. § 50-627(b), including but not limited to:

i.      Taking advantage of Plaintiff's inability to reasonably protect his interests owing to ignorance of the law, in violation of K.S.A. § 50-627(b)(1); and

8

ii.    Making a misleading statement of opinion on which Plaintiff was likely to rely, to his detriment, in violation of K.S.A. § 50-627(b)(6).

42.    WHEREFORE, for this Count One of his Complaint, Plaintiff respectfully prays that the Court enter judgment in his favor and against SM Ford for statutory damages in the amount of $10,000 per violation, pursuant to K.S.A. § 50-636(a); reasonable attorneys' fees and litigation costs, pursuant to K.S.A. § 50-634(e); pre and post-judgment interest at the greatest allowable rate; and any other, further relief the Court may deem just and proper.

## COUNT TWO:
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT,
## K.S.A. § 50-623 *et seq.*
### *Against Santander*

43.    Plaintiff, for this Count Two of his Complaint, incorporates the previous paragraphs as if wholly set forth herein.

44.    Plaintiff is a "consumer" and Santander a "supplier" for the purposes of the Kansas Consumer Protection Act (the "KCPA"). *See* K.S.A. § 50-624(b),(l).

45.    Plaintiff's purchase of the Ridgeline was a "consumer transaction" pursuant to K.S.A. § 50-624(c).

46.    Plaintiff has been damaged and is "aggrieved" under the KCPA because of Santander's conduct.

47.    The KCPA "shall" be liberally construed to promote its policies of protecting consumers against suppliers that commit deceptive and unconscionable practices. K.S.A. § 50-623.

48.     Santander's violations of K.S.A. § 50-626, Deceptive Acts and Practices, include but are not limited to:

a)      Making, generally, false and/or misleading representations, knowingly or with reason to know, in violation of K.S.A. § 50-626(a);

b)      Making willful use, in oral or written representations, of exaggeration, falsehood, innuendo or ambiguity, in violation of K.S.A. § 50-626(b)(2);

c)      Willfully failing to state a material fact, or the willful concealment, suppression, or omission of a material fact, in violation of K.S.A. § 50-626(b)(3);

d)      Falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies or obligations, in violation of K.S.A. § 50-626(b)(8);

e)      Committing, in violation of K.S.A. § 50-626, the following deceptive acts and/or practices:

> i.    Retaining Plaintiff's payments on the Ridgeline even though its sale was "fraudulent and void";
>
> ii.   Informing Plaintiff that he had to continue making payments on the Ridgeline even though its sale was "fraudulent and void"; and
>
> iii.  Threatening Plaintiff with repossession of the Ridgeline even though its sale was "fraudulent and void."

49.     Santander's violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include but are not limited to:

c)      Making unconscionable representations/misrepresentations and/or engaging in unconscionable conduct, in violation of K.S.A. § 50-627(a), including but not limited to:

      i.     Retaining Plaintiff's payments on the Ridgeline even though its sale was "fraudulent and void";

      ii.    Informing Plaintiff that he had to continue making payments on the Ridgeline even though its sale was "fraudulent and void"; and

      iii.   Threatening Plaintiff with repossession of the Ridgeline even though its sale was "fraudulent and void"; and

      iv.    Engaging in a pattern of conduct that, taken in its totality, was unconscionable.

d)      Making unconscionable representations/misrepresentations and/or engaging in unconscionable conduct, in violation of K.S.A. § 50-627(b), including but not limited to:

      i.     Taking advantage of Plaintiff's inability to reasonably protect his interests owing to ignorance of the law, in violation of K.S.A. § 50-627(b)(1); and

      ii.    Making a misleading statement of opinion on which Plaintiff was likely to rely, to his detriment, in violation of K.S.A. § 50-627(b)(6).

50.     WHEREFORE, for this Count Two of his Complaint, Plaintiff respectfully prays that the Court enter judgment in his favor and against Santander for statutory damages in the amount of $10,000 per violation, pursuant to K.S.A. § 50-636(a); reasonable attorneys' fees and litigation costs, pursuant to  K.S.A. § 50-634(e); pre and

post-judgment interest at the greatest allowable rate; and any other, further relief the Court may deem just and proper.

### COUNT THREE:
### NEGLIGENCE
*Against SM Ford*

51.     Plaintiff, for this Count Three of his Complaint, incorporates the previous paragraphs as if wholly set forth herein.

52.     SM Ford owed Plaintiff legal duties, including the duty to timely transfer title pursuant to Kansas law.

53.     As described, SM Ford not only failed to comply with Kansas law in this regard but dragged Plaintiff's title ordeal out over an inane expanse of time, to Plaintiff's detriment. SM Ford, as described, fed Plaintiff multiple excuses, and misrepresentations, as to why it hadn't transferred the title.

54.     SM Ford obviously breached its legal duty to Plaintiff by not timely transferring the Ridgeline's title.

55.     SM Ford's breach of its duty directly and proximately caused Plaintiff damages in the form of his down payment, monthly payments, insurance payments, loss of use of those funds, trade-in Kia,  loss of use of the Ridgeline, funds spent on a replacement truck, emotional distress, substantial wasted time, and possible negative credit reporting.

56.     WHEREFORE, for this Count Three of his Complaint, Plaintiff respectfully prays that the Court enter judgment in his favor and against SM Ford in such amount as is allowable by law and to be determined at trial, and for litigation costs, pre and post-

judgment at the greatest allowable rate, and any other, further relief the Court may deem just and proper.

## COUNT FOUR:
## <u>UNJUST ENRICHMENT</u>
*Against SM Ford and Santander*

57.     Plaintiff, for this Count Four of his Complaint, incorporates the previous paragraphs as if wholly set forth herein.

58.     Via the misleading, bad-faith, and unlawful conduct described herein, Defendants unjustly received a windfall in the form of payments and trade-in vehicle relative to a "fraudulent and void" sale.

59.     It would be unjust to allow Defendants to retain such benefits derived incident to unlawful conduct.

60.     As described, Plaintiff made a down payment, numerous monthly payments, and traded in a vehicle to acquire the Ridgeline despite not being able to legally own the vehicle. On information and belief, those payments have been allocated between SM Ford and Santander.

61.     Further, as described, Defendants acted with conscious disregard for Plaintiff's rights. It's not as if SM Ford were simply a bit late in providing the Ridgeline's title; rather, it was egregiously late and strung Plaintiff along for numerous months while Defendants continued to collect and/or retain payments made by Plaintiff towards the Ridgeline.

62.     The extremity of this conduct also rendered it wanton and willful.

63.     Plaintiff is entitled to restitution, disgorgement, and/or the imposition of a constructive trust relative to all payments, profits, revenues, compensation, or otherwise benefits obtained by Defendants through the "fraudulent and void" sale of the Ridgeline.

64.     WHEREFORE, for this Count Four of his Complaint, Plaintiff respectfully prays that the Court enter judgment in his favor and against Defendants in such amount as is allowable by law and to be determined at trial, and for litigation costs, pre and post-judgment interest at the greatest allowable rate, and any other, further relief the Court may deem just and proper.

**COUNT FIVE:**
**<u>CONVERSION</u>**
*Against SM Ford and Santander*

65.     Plaintiff, for this Count Five of his Complaint, incorporates the previous paragraphs as if wholly set forth herein.

66.     As described, the sale of the Ridgeline to Plaintiff became "fraudulent and void" as a matter of Kansas law when SM Ford failed to timely assign its title to Plaintiff.

67.     Defendants thereby deprived Plaintiff of his right to possess his payments and trade-in towards the Ridgeline, as he made a trade-in, down payment, and numerous monthly payments on a sale that became "fraudulent and void."

68.     As stated, Plaintiff made repeated demands for the title.

69.     Defendants, as described, refused to provide the title and retained payments made on the Ridgeline, to the exclusion of Plaintiff.

70.     Defendants have acted in a willful and wanton manner as to Plaintiff.

71.     WHEREFORE, for this Count Five of his Complaint, Plaintiff respectfully prays that the Court enter judgment in his favor and against Defendants in such amount as is allowable by law and to be determined at trial, and for litigation costs, pre and post-judgment interest at the greatest allowable rate, and any other, further relief the Court may deem just and proper.

**COUNT SIX:**
**FTC HOLDER RULE,**
**<u>16 C.F.R. § 433</u>**
*Against Santander*

72.     Plaintiff, for this Count Six of his Complaint, incorporates the previous paragraphs as if wholly set forth herein.

73.     Plaintiff is, pursuant to 16 C.F.R. § 433.1(b), a "consumer."

74.     Defendant Santander is, pursuant to 16 C.F.R. § 433.1(c), a "creditor."

75.     Santander entered into, pursuant to 16 C.F.R. § 433.1(i), a "consumer credit contract" with Plaintiff.

76.     In accordance with the requirements of the Federal Trade Commission's (the "FTC") Rule on Preservation of Consumer Claims and Defenses, 16 C.F.R. § 433, commonly known as the FTC Holder Rule, the purchase contract that SM Ford assigned to Santander, upon information and belief, reads, in part:

> **ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.**

77.     As described, SM Ford sold the Ridgeline to Plaintiff and Plaintiff obtained the Ridgelines with proceeds from, and pursuant to, a sales contract.

78.     Upon information and belief, Santander is the current holder of the contract, in its entirety.

79.     Plaintiff hereby asserts against Santander all claims and defenses he has against SM Ford.

80.     Because Plaintiff is entitled to damages against SM Ford, he likewise requests all such relief against Santander.

81.     The FTC Holder Rule imposes vicarious liability upon Santander. This vicarious liability is a form of joint-and-several liability, which is capped by the "amounts paid."

82.     Attorneys' fees aren't subject to this vicarious-liability cap.

83.     WHEREFORE, for this Count Six of his Complaint, Plaintiff respectfully prays for joint-and-several judgment—as to each and every claim for which Plaintiff establishes liability against SM Ford—against Santander in such sum as is equal to any amounts Plaintiff has paid on the sales contract; reasonable attorneys' fees; litigation costs; interest, in the greatest allowable amount, from the date of the sale; and any other, further relief the Court may deem just and proper.

### JURY TRIAL DEMAND

84.     Plaintiff hereby demands a jury trial on all issues so triable.

### DESIGNATION OF PLACE OF JURY TRIAL

85.     Plaintiffs designate Kansas City, Kansas as the place for this case to be

tried to a jury.

Respectfully submitted,

*/s/ Bryce B. Bell*
Bryce B. Bell          KS#20866
Mark W. Schmitz     KS#27538
Andrew Taylor        KS#28542
Jenilee V. Zentrich   KS#29098
**Bell Law, LLC**
2600 Grand Blvd., Ste. 580
Kansas City, Missouri 64108
Telephone: 816-886-8206
Facsimile:  816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com
AT@BellLawKC.com
JZ@BellLawKC.com
***Attorneys for Plaintiff***